IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| FREESCALE SEMICONDUCTOR, INC. § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | CIVIL ACTION NO. 1:12-CV-644 |
| § | |
| VIZIO, INC., § | |
| AMTRAN TECHNOLOGY, CO., LTD., AND § | |
| AMTRAN LOGISTICS, INC. § | |
| § | |
| Defendants. § | |

**COMPLAINT FOR PATENT INFRINGEMENT**

Plaintiff, Freescale Semiconductor, Inc. ("Freescale"), hereby files this Complaint against Defendants Vizio, Inc., Amtran Technology Co., Ltd., and Amtran Logistics, Inc. for infringement of U.S. Patent Nos. 6,920,316 B2 ("the '316 patent"), 5,825,640 ("the '640 patent"), 5,943,274 ("the '274 patent"), and 5,467,455 ("the '455 patent") (collectively "the Patents-In-Suit").

**PARTIES**

1.  Freescale is a Delaware corporation with its headquarters located at 6501 William Cannon Drive West, Austin, Texas. Freescale was formed in 2004 as a result of the divestiture of the Semiconductor Products Sector of Motorola, Inc.

2.  Upon information and belief, Defendant Vizio, Inc. is a corporation organized under the laws of California, and maintains its principal place of business at 39 Tesla, Irvine, CA 92618.

3.	Upon information and belief, Defendant Amtran Technology Co., Ltd. is a corporation organized under the laws of Taiwan, and maintains its principal place of business at No. 268, LianCheng Rd., Jhonghe District, Xinbei City, Taiwan.

4.	Upon information and belief, Defendant Amtran Logistics, Inc. is a corporation organized under the laws of California, and maintains its principal place of business at 9 Goddard, Irvine, CA 92618.

5.	Defendants Vizio, Inc., Amtran Technology Co., Ltd., and Amtran Logistics, Inc. are hereinafter referred to as "Defendants."

## JURISDICTION AND VENUE

6.	This is a civil action for patent infringement, injunctive relief, and damages arising under the patent laws of the United States, 35 U.S.C. §§ 1, et seq.  This Court has exclusive subject matter jurisdiction over this case for patent infringement under 28 U.S.C. §§ 1331 and 1338(a).

7.	Upon information and belief, Defendants have ongoing and systematic contacts within the State of Texas and within this district.  Defendants, directly or through intermediaries (including distributors, retailers, and others), ship, distribute, offer for sale, sell, and/or advertise their products in the United States, the State of Texas, and the Western District of Texas.

8.	Defendants have purposefully and voluntarily placed one or more of their infringing products into the stream of commerce with the expectation that they will be purchased by consumers in the Western District of Texas.  These infringing products have been and continue to be purchased by consumers in the Western District of Texas.

9.	Defendants have committed the tort of patent infringement within the State of Texas, and, more particularly, within the Western District of Texas.  Therefore, this Court has personal jurisdiction over Defendants.

10. Venue is proper in the Western District of Texas under 28 U.S.C. §§ 1391 and 1400(b).

**U.S. PATENT NO. 6,920,316 B2**

11. On July 19, 2005, the United States Patent and Trademark Office duly and legally issued the '316 patent, titled "High Performance Integrated Circuit Regulator With Substrate Transient Suppression," to Lawrence Edwin Connell, Neal W. Hollenbeck, Michael Lee Bushman, and Daniel Patrick McCarthy. A true and correct copy of the '316 patent is attached as Exhibit 1.

12. Freescale is the sole owner and assignee of all right, title, and interest in and to the '316 patent and possesses all rights of recovery under the '316 patent, including the right to recover damages for past infringements.

13. The '316 patent is valid and enforceable.

**U.S. PATENT NO. 5,825,640**

14. On October 20, 1998, the United States Patent and Trademark Office duly and legally issued the '640 patent, titled "Charge Pump Circuit And Method," to John H. Quigley and David A. Newman. A true and correct copy of the '640 patent is attached as Exhibit 2.

15. Motorola was the owner by assignment of the '640 patent until Motorola divested its Semiconductor Products Sector business and Freescale was formed. Motorola assigned the '640 patent to Freescale. Freescale is the sole owner and assignee of all right, title, and interest in and to the '640 patent and possesses all rights of recovery under the '640 patent, including the right to recover damages for past infringements.

16. The '640 patent is valid and enforceable.

**U.S. PATENT NO. 5,943,274**

17. On August 24, 1999, the United States Patent and Trademark Office duly and legally issued the '274 patent, titled "Method And Apparatus For Amplifying A Signal To Produce A Latched Digital Signal," to Alan S. Roth and Scott G. Nogle.  A true and correct copy of the '274 patent is attached as Exhibit 3.

18. Motorola was the owner by assignment of the '274 patent until Motorola divested its Semiconductor Products Sector business and Freescale was formed.  Motorola assigned the '274 patent to Freescale.  Freescale is the sole owner and assignee of all right, title, and interest in and to the '274 patent and possesses all rights of recovery under the '274 patent, including the right to recover damages for past infringements.

19. The '274 patent is valid and enforceable.

**U.S. PATENT NO. 5,467,455**

20. On November 14, 1995, the United States Patent and Trademark Office duly and legally issued the '455 patent, titled "Data Processing System And Method For Performing Dynamic Bus Termination," to James G. Gay and William B. Ledbetter, Jr.  A true and correct copy of the '455 patent is attached as Exhibit 4.

21. Motorola was the owner by assignment of the '455 patent until Motorola divested its Semiconductor Products Sector business and Freescale was formed.  Motorola assigned the '455 patent to Freescale.  Freescale is the sole owner and assignee of all right, title, and interest in and to the '455 patent and possesses all rights of recovery under the '455 patent, including the right to recover damages for past infringements.

22. The '455 patent is valid and enforceable.

**GENERAL ALLEGATIONS**

23. Upon information and belief, Defendants make, use, sell, and offer to sell within the United States, and/or import into the United States one or more products, including televisions, that contain certain integrated circuits and/or chipsets that practice each of the elements of one or more claims of the Patents-In-Suit, without license from Freescale, in the Western District of Texas and throughout the United States. Examples of those products include Vizio model numbers E320VP, E321ME, E370VL, E3D420VX, E472VL, M260VA, M320NV, M3D460SR, M420NV, M420SV, and VTAB1008.

24. Defendants' continuing acts of infringement are irreparably harming and causing damage to Freescale. Freescale has no adequate remedy at law to redress Defendants' continuing acts of infringement. The hardships that would be imposed upon Defendants by an injunction are less than those faced by Freescale should an injunction not issue. Furthermore, the public interest would be served by issuance of an injunction.

25. Upon information and belief, Defendants have knowledge of the Patents-In-Suit and have not ceased their infringing activities in light of such knowledge.

### Count One – Infringement of U.S. Patent No. 6,920,316 B2

26. This count incorporates by reference Paragraphs 1 through 25 as if fully set forth herein.

27. Upon information and belief, Defendants make, use, sell, and offer to sell within the United States, and/or import into the United States one or more products, including but not limited to those identified in Paragraph 23, that practice each of the elements of one or more claims of the '316 patent, without license from Freescale, in the Western District of Texas and throughout the United States.

28. By making, using, selling, and offering to sell within the United States, and/or importing into the United States their products, Defendants have directly infringed, and will

continue to directly infringe, one or more claims of the '316 patent under 35 U.S.C. § 271 (a), literally and/or under the doctrine of equivalents.

29. Defendants have had actual or constructive knowledge of the '316 patent, yet continues to infringe the '316 patent.

30. Defendants knew that certain devices they sell, offer to sell within the United States, and/or import into the United States contained one or more products, including but not limited to those identified in Paragraph 23, which was especially made or especially adapted for infringing one or more claims of the '316 patent.

31. Defendants knew that certain devices they sell, offer to sell within the United States, and/or import into the United States, contained one or more products, including but not limited to those identified in Paragraph 23, which was not a staple article or commodity of commerce suitable for substantial noninfringing use.

32. Defendants' customers, as a result of Defendants selling, offering to sell within the United States, and/or importing into the United States, certain devices that contain one or more products, including but not limited to those identified in Paragraph 23, acquire and use such devices in a manner that directly infringes the '316 patent.

33. Despite having knowledge that consumer use of certain devices it sells, offers to sell within the United States, and/or imports into the United States, including but not limited to those identified in Paragraph 23, infringes one or more claims of the '316 patent, Defendants specifically intended for consumers to acquire and use such devices in a manner that infringes one or more claims of the '316 patent, and Defendants knew or should have known that their actions were inducing infringement.

34. Due to Defendants' knowledge and actions described in Paragraphs 29-32 above, Defendants have contributorily infringed, and will continue to contributorily infringe, one or

more claims of the '316 patent under 35 U.S.C. § 271 (c), literally and/or under the doctrine of equivalents.

35.     Due to Defendants' knowledge and actions described in Paragraphs 29 and 32-33, Defendants have actively induced infringement of, and will continue to actively induce infringement of, one or more claims of the '316 patent under 35 U.S.C. § 271 (b), literally and/or under the doctrine of equivalents.

36.     As a direct and proximate consequence of the acts and practices of Defendants, Freescale has been, is being and, unless such acts and practices are enjoined by the Court, will continue to be injured in its business and property rights, and has suffered, is suffering, and will continue to suffer injury and damages for which it is entitled to relief under 35 U.S.C. § 284.

37.     As a direct and proximate consequence of the acts and practices of Defendants, Defendants have also caused, are causing and, unless such acts and practices are enjoined by the Court, will continue to cause irreparable harm to Freescale for which there is no adequate remedy at law, and for which Freescale is entitled to injunctive relief under 35 U.S.C. § 283.

38.     Upon information and belief, Defendants' infringement of the '316 patent has been and continues to be willful and deliberate.

### Count Two – Infringement of U.S. Patent No. 5,825,640

39.     This count incorporates by reference Paragraphs 1 through 38 as if fully set forth herein.

40.     Upon information and belief, Defendants make, use, sell, and offer to sell within the United States, and/or import into the United States one or more products, including but not limited to those identified in Paragraph 23, that practice each of the elements of one or more claims of the '640 patent, without license from Freescale, in the Western District of Texas and throughout the United States.

41.     By making, using, selling, and offering to sell within the United States, and/or importing into the United States their products, Defendants have directly infringed, and will continue to directly infringe, one or more claims of the '640 patent under 35 U.S.C. § 271 (a), literally and/or under the doctrine of equivalents.

42.     Defendants have had actual or constructive knowledge of the '640 patent, yet continues to infringe the '640 patent.

43.     Defendants knew that certain devices they sell, offer to sell within the United States, and/or import into the United States contained one or more products, including but not limited to those identified in Paragraph 23, which was especially made or especially adapted for infringing one or more claims of the '640 patent.

44.     Defendants knew that certain devices they sell, offer to sell within the United States, and/or import into the United States, contained one or more products, including but not limited to those identified in Paragraph 23, which was not a staple article or commodity of commerce suitable for substantial noninfringing use.

45.     Defendants' customers, as a result of Defendants selling, offering to sell within the United States, and/or importing into the United States, certain devices that contain one or more products, including but not limited to those identified in Paragraph 23, acquire and use such devices in a manner that directly infringes the '640 patent.

46.     Despite having knowledge that consumer use of certain devices it sells, offers to sell within the United States, and/or imports into the United States, including but not limited to those identified in Paragraph 23, infringes one or more claims of the '640 patent, Defendants specifically intended for consumers to acquire and use such devices in a manner that infringes one or more claims of the '640 patent, and Defendants knew or should have known that their actions were inducing infringement.

47. Due to Defendants' knowledge and actions described in Paragraphs 42-45 above, Defendants have contributorily infringed, and will continue to contributorily infringe, one or more claims of the '640 patent under 35 U.S.C. § 271 (c), literally and/or under the doctrine of equivalents.

48. Due to Defendants' knowledge and actions described in Paragraphs 42 and 45-46, Defendants have actively induced infringement of, and will continue to actively induce infringement of, one or more claims of the '640 patent under 35 U.S.C. § 271 (b), literally and/or under the doctrine of equivalents.

49. As a direct and proximate consequence of the acts and practices of Defendants, Freescale has been, is being and, unless such acts and practices are enjoined by the Court, will continue to be injured in its business and property rights, and has suffered, is suffering, and will continue to suffer injury and damages for which it is entitled to relief under 35 U.S.C. § 284.

50. As a direct and proximate consequence of the acts and practices of Defendants, Defendants have also caused, are causing and, unless such acts and practices are enjoined by the Court, will continue to cause irreparable harm to Freescale for which there is no adequate remedy at law, and for which Freescale is entitled to injunctive relief under 35 U. S. C. § 283.

51. Upon information and belief, Defendants' infringement of the '640 patent has been and continues to be willful and deliberate.

**Count Three – Infringement of U.S. Patent No. 5,943,274**

52. This count incorporates by reference Paragraphs 1 through 51 as if fully set forth herein.

53. Upon information and belief, Defendants make, use, sell, and offer to sell within the United States, and/or import into the United States one or more products, including but not limited to those identified in Paragraph 23, that practice each of the elements of one or more

claims of the '274 patent, without license from Freescale, in the Western District of Texas and throughout the United States.

54. By making, using, selling, and offering to sell within the United States, and/or importing into the United States their products, Defendants have directly infringed, and will continue to directly infringe, one or more claims of the '274 patent under 35 U.S.C. § 271 (a), literally and/or under the doctrine of equivalents.

55. Defendants have had actual or constructive knowledge of the '274 patent, yet continues to infringe the '274 patent.

56. Defendants knew that certain devices they sell, offer to sell within the United States, and/or import into the United States contained one or more products, including but not limited to those identified in Paragraph 23, which was especially made or especially adapted for infringing one or more claims of the '274 patent.

57. Defendants knew that certain devices they sell, offer to sell within the United States, and/or import into the United States, contained one or more products, including but not limited to those identified in Paragraph 23, which was not a staple article or commodity of commerce suitable for substantial noninfringing use.

58. Defendants' customers, as a result of Defendants selling, offering to sell within the United States, and/or importing into the United States, certain devices that contain one or more products, including but not limited to those identified in Paragraph 23, acquire and use such devices in a manner that directly infringes the '274 patent.

59. Despite having knowledge that consumer use of certain devices they sell, offer to sell within the United States, and/or import into the United States, including but not limited to those identified in Paragraph 23, infringes one or more claims of the '274 patent, Defendants specifically intended for consumers to acquire and use such devices in a manner that infringes

one or more claims of '274 patent, and Defendants knew or should have known that their actions were inducing infringement.

60.     Due to Defendants' knowledge and actions described in Paragraphs 55-58 above, Defendants have contributorily infringed, and will continue to contributorily infringe, one or more claims of the '274 patent under 35 U.S.C. § 271 (c), literally and/or under the doctrine of equivalents.

61.     Due to Defendants' knowledge and actions described in Paragraphs 55 and 58-59, Defendants have actively induced infringement of, and will continue to actively induce infringement of, one or more claims of the '274 patent under 35 U.S.C. § 271 (b), literally and/or under the doctrine of equivalents.

62.     As a direct and proximate consequence of the acts and practices of Defendants, Freescale has been, is being and, unless such acts and practices are enjoined by the Court, will continue to be injured in its business and property rights, and has suffered, is suffering, and will continue to suffer injury and damages for which it is entitled to relief under 35 U.S.C. § 284.

63.     As a direct and proximate consequence of the acts and practices of Defendants, Defendants have also caused, arecausing and, unless such acts and practices are enjoined by the Court, will continue to cause irreparable harm to Freescale for which there is no adequate remedy at law, and for which Freescale is entitled to injunctive relief under 35 U. S. C. § 283.

64.     Upon information and belief, Defendants' infringement of the '274 patent has been and continues to be willful and deliberate.

### Count Four – Infringement of U.S. Patent No. 5,467,455

65.     This count incorporates by reference Paragraphs 1 through 64 as if fully set forth herein.

66. Upon information and belief, Defendant makes, uses, sells, and offers to sell within the United States, and/or imports into the United States one or more products, including but not limited to those identified in Paragraph 23, that practice each of the elements of one or more claims of the '455 patent, without license from Freescale, in the Western District of Texas and throughout the United States.

67. By making, using, selling, and offering to sell within the United States, and/or importing into the United States its products, Defendant has directly infringed, and will continue to directly infringe, one or more claims of the '455 patent under 35 U.S.C. § 271 (a), literally and/or under the doctrine of equivalents.

68. Defendant has had actual or constructive knowledge of the '455 patent, yet continues to infringe the '455 patent.

69. Defendant knew that certain devices it sells, offers to sell within the United States, and/or imports into the United States contained one or more products, including but not limited to those identified in Paragraph 23, which was especially made or especially adapted for infringing one or more claims of the '455 patent.

70. Defendant knew that certain devices it sells, offers to sell within the United States, and/or imports into the United States, contained one or more products, including but not limited to those identified in Paragraph 23, which was not a staple article or commodity of commerce suitable for substantial noninfringing use.

71. Defendant's customers, as a result of Defendant selling, offering to sell within the United States, and/or importing into the United States, certain devices that contain one or more products, including but not limited to those identified in Paragraph 23, acquire and use such devices in a manner that directly infringes the '455 patent.

72.     Despite having knowledge that consumer use of certain devices it sells, offers to sell within the United States, and/or imports into the United States, including but not limited to those identified in Paragraph 23, infringes one or more claims of the '455 patent, Defendant specifically intended for consumers to acquire and use such devices in a manner that infringes one or more claims of '455 patent, and Defendant knew or should have known that its actions were inducing infringement.

73.     Due to Defendant's knowledge and actions described in Paragraphs 68-71 above, Defendant has contributorily infringed, and will continue to contributorily infringe, one or more claims of the '455 patent under 35 U.S.C. § 271 (c), literally and/or under the doctrine of equivalents.

74.     Due to Defendant's knowledge and actions described in Paragraphs 68 and 71-72, Defendant has actively induced infringement of, and will continue to actively induce infringement of, one or more claims of the '455 patent under 35 U.S.C. § 271 (b), literally and/or under the doctrine of equivalents.

75.     As a direct and proximate consequence of the acts and practices of Defendant, Freescale has been, is being and, unless such acts and practices are enjoined by the Court, will continue to be injured in its business and property rights, and has suffered, is suffering, and will continue to suffer injury and damages for which it is entitled to relief under 35 U.S.C. § 284.

76.     As a direct and proximate consequence of the acts and practices of Defendant, Defendant has also caused, is causing and, unless such acts and practices are enjoined by the Court, will continue to cause irreparable harm to Freescale for which there is no adequate remedy at law, and for which Freescale is entitled to injunctive relief under 35 U. S. C. § 283.

77.     Upon information and belief, Defendant's infringement of the '455 patent has been and continues to be willful and deliberate.

**REQUEST FOR A JURY TRIAL**

78.     Freescale requests a jury trial of all issues in this action so triable.

**PRAYER FOR RELIEF**

WHEREFORE, Freescale prays for judgment against Defendants as follows and for the following relief:

A.     a judgment that each and every Patent-In-Suit was duly and legally issued, is valid, and is enforceable;

B.     a permanent injunction restraining Defendants and their officers, employees, agents, parents, subsidiaries, affiliates, and anyone else in active concert or participation with them, from taking any actions that would directly or indirectly infringe any of the claims of each and every Patent-In-Suit;

C.     a judgment that Defendants have directly infringed, contributorily infringed, and/or induced infringement of one or more claims of each of the Patents-In-Suit;

D.     a judgment that Defendants have willfully infringed one or more claims of each of the Patents-In-Suit;

E.     actual damages through verdict and post-verdict until Defendants are enjoined from further infringing activities;

F.     an accounting of damages through verdict and post-verdict until Defendants are enjoined from further infringing activities;

G.     all pre-judgment and post-judgment interest allowed by law, including an award of prejudgment interest, pursuant to 35 U.S.C. § 284, from the date of each act of infringement of any claims of the Patents-in-Suit to the day a damages judgment is entered, and further award of post-judgment interest, pursuant to 28 U.S.C. § 1961, continuing until such judgment is paid, at the maximum rate allowed by law;

H. a judgment and order finding this to be an exceptional case and requiring Defendants to pay the costs of this action (including all disbursements) and attorneys' fees as provided by 35 U.S.C. § 285;

I. reasonable attorneys' fees and costs;

J. an award of increased damages pursuant to 35 U.S.C. § 284 for Defendants' willful and deliberate patent infringement; and

K. such other and further relief as the Court deems just and equitable.

Dated: July 16, 2012                                Respectfully submitted,

By: */s/Alan D Albright*
Alan D Albright
State Bar No. 00973650
Email:  alan.albright@bgllp.com
Barry K. Shelton
State Bar No. 24055029
Email:  barry.shelton@bgllp.com
Michael Chibib
State Bar No. 00793497
Email:  michael.chibib@bgllp.com
BRACEWELL & GIULIANI LLP
111 Congress Avenue, Suite 2300
Austin, Texas  78701
(512) 472-7800
(512) 472-9123 fax

*Counsel for Plaintiff,*
*Freescale Semiconductor, Inc.*