# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

| | | |
|---|---|---|
| FREESCALE SEMICONDUCTOR, INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | |
| AMTRAN TECHNOLOGY CO., LTD.; | § | |
| AMTRAN LOGISTICS, INC.; AOC | § | |
| INTERNATIONAL (USA) LTD.; CSR | § | |
| TECHNOLOGY, INC.; ENVISION | § | |
| PERIPHERALS, INC., FUNAI | § | |
| CORPORATION, INC.; FUNAI ELECTRIC | § | CASE NO. 1:12-CV-644-LY |
| CO., LTD.; MARVELL SEMICONDUCTOR, | § | |
| INC., MEDIATEK, INC.; MEDIATEK USA | § | |
| INC.; SANYO ELECTRIC CO., LTD.; | § | |
| SANYO NORTH AMERICA | § | |
| CORPORATION; SANYO | § | |
| MANUFACTURING CORPORATION; TOP | § | |
| VICTORY ELECTRONICS (TAIWAN) CO., | § | |
| LTD.; TOP VICTORY ELECTRONICS | § | |
| (FUJIAN) CO., LTD.; TPV TECHNOLOGY | § | |
| LIMITED; TPV INTERNATIONAL (USA) | § | |
| INC.; VIZIO, INC.; AND ZORAN | § | |
| CORPORATION. | § | |
| | § | |
| Defendants. | § | |

## DEFENDANT MEDIATEK INC.'S RENEWED MOTION TO DISMISS PLAINTIFF'S CONSOLIDATED AMENDED COMPLAINT FOR LACK OF PERSONAL JURISDICTION

# TABLE OF CONTENTS

Page

I.      BACKGROUND ........................................................................................................2

    A.      The Court's Order on MediaTek's Original Motion to Dismiss and
Freescale's Resulting Jurisdictional Discovery .......................................................2

    B.      Unrefuted Facts Showing MediaTek's Lack of Contacts with Texas ...................7

II.     ARGUMENT ..........................................................................................................9

    A.      Legal Standard .........................................................................................................9

    B.      MediaTek is Not Subject to Specific Personal Jurisdiction in Texas Under
Freescale's "Stream of Commerce Theory" ..........................................................11

    C.      Exercising Personal Jurisdiction Over MediaTek Would Violate
Traditional Notions of Fair Play and Substantial Justice ......................................15

III.    CONCLUSION......................................................................................................16

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*Adell Corp. v. Elco Textron*,
    51 F. Supp. 2d 752 (N.D. Tex. 1999) ...................................................................13

*AFTG-TG, LLC v. Nuvoton Tech. Corp.*,
    689 F.3d 1358 (Fed. Cir. 2011)...........................................................9, 10, 11

*Asahi Metal Indus. Co. Ltd. v. Superior Ct. of Cal.*,
    480 U.S. 102 (1987).......................................................................12, 13

*Auto Wax Co. v. Kasei Kogyo Co.*,
    2001 WL 1891719 (W.D. Tex. Sept. 6, 2001).........................13, 14, 15, 16

*Burger King Corp. v. Rudzewicz*,
    471 U.S. 462 (1985) ...............................................................................11

*Grober v. Mako Prods.*,
    686 F.3d 1335 (Fed. Cir. 2012)..........................................................10, 11

*Hanson v. Denckla*,
    357 U.S. 235 (1958)...............................................................................10

*Int'l Shoe Co. v. Washington*,
    326 U.S. 310 (1945)...............................................................................15

*Patent Rights Protective Group, LLC v. Video Gaming Tech., Inc.*,
    603 F.3d 1364 (Fed. Cir. 2010)............................................................16

*Religious Tech. Ctr. v. Liebreich*,
    339 F.3d 369 (5th Cir. 2003) ................................................................10

*Travelers Indem. Co. v. Calvert Fire Ins. Co.*,
    789 F.2d 826 (5th Cir. 1986) ...............................................................11

*World-Wide Volkswagen v. Woodson*,
    444 U.S. 286 (1980)............................................................... passim

**RULES**

Fed. R. Civ. P. 30(b)(6)......................................................................................3

**CONSTITUTIONAL PROVISIONS**

Due Process Clause of the U.S. Constitution..............................................................................9, 10

Defendant MediaTek Inc. ("MediaTek") hereby renews its motion to dismiss Plaintiff Freescale Semiconductor, Inc.'s ("Freescale") Consolidated Amended Complaint ("Complaint") for lack of personal jurisdiction over MediaTek.  The parties briefed this issue earlier this year, and this Court issued an order allowing Freescale to take additional discovery to see if it could support a "stream of commerce" jurisdiction theory.  Freescale has now taken this discovery, which has only served to confirm that no basis exists for personal jurisdiction over MediaTek.

In connection with the prior motion, this Court denied Freescale's requests for jurisdictional discovery regarding its unsupported theories of general jurisdiction (jurisdiction based on alter ego, and/or research and development of the accused products), but allowed Freescale to take jurisdictional discovery limited to its "stream of commerce" theory, to see if Freescale could find evidence to "demonstrate any purposeful conduct on the part of MediaTek aimed at this forum."  That jurisdictional discovery, now complete, demonstrates that MediaTek lacks the purposeful "conduct and connection" with Texas necessary to support specific personal jurisdiction in this forum.

The relevant jurisdictional facts of record remain unchanged.  MediaTek is a Taiwanese company that sells integrated circuit ("IC") chips to customers in Asia, primarily in Taiwan and mainland China.  MediaTek does not (and has never) targeted its products to this forum through advertising, marketing, or providing advice to customers in Texas.  MediaTek has no office, no sales, and no property in Texas; is not authorized, registered, or licensed to do business in Texas; does not direct any of its activities toward residents of Texas; and has not otherwise purposefully availed itself of doing business in this State.  MediaTek has never sold any IC chip knowing or intending that it would be purchased by consumers in Texas.  Nor does MediaTek control, participate in, facilitate, or monitor the sale or distribution of its chips (or products containing its

chips) beyond their initial sale by MediaTek or one of its distributors in Asia.

As with the prior motion, the most that Freescale can show is that, following MediaTek's sale and transfer of title to its ICs' in Asia, there is some chance its IC products may end up in Texas, long after having been incorporated into downstream products several degrees removed from MediaTek's own sale and control. This Court has already made clear that this falls short of passing constitutional muster. That same conclusion is warranted now. Freescale's Complaint should be dismissed with prejudice as against MediaTek Inc.

## I.      BACKGROUND

### A.      The Court's Order on MediaTek's Original Motion to Dismiss and Freescale's Resulting Jurisdictional Discovery

MediaTek filed its original motion to dismiss for lack of personal jurisdiction on February 12, 2013. (Dkt. No. 62.) Freescale's response was filed on February 26, 2013 and MediaTek's reply on March 5, 2013. (Dkt. Nos. 73 and 85). The Court issued an Order denying MediaTek's motion without prejudice and granting Freescale leave to conduct limited jurisdictional discovery on June 12, 2013. (Dkt. No. 108).

Although Freescale advanced several jurisdiction related theories in opposition to MediaTek's motion to dismiss, the Court granted jurisdictional discovery on only a single issue: to determine  "whether [Freescale] can satisfy the more restrictive version of the stream-of-commerce theory or demonstrate any purposeful conduct on the part of MediaTek aimed at this

forum."[1]  (*Id.* at 9)  As stated by this Court, the ultimate question is whether, under *World-Wide Volkswagen Corp.*, MediaTek's "'conduct and connection' with this forum, as opposed to that of downstream manufacturers AmTran and Vizio, are such that it should reasonably anticipate being haled into court here." (Dkt. No. 108 at 9, citing *World- Wide Volkswagen Corp.*, 444 U.S. at 297).

Pursuant to the Court's order, Freescale propounded substantial discovery on MediaTek, choosing to direct it to MediaTek as opposed to other parties to the litigation such as AmTRAN and VIZIO.  Freescale served two sets of interrogatories (24 total) to MediaTek, a Rule 30(b)(6) notice to MediaTek containing 24 corporate topics, and noticed the individual depositions of four MediaTek employees:  Russell Yin, Alex Chen, Andy Chu, and Ryan Chen.[2]  MediaTek timely responded to the interrogatories, designated two witnesses to testify in response to Freescale's 30(b)(6) topics, and provided each of the individually-noticed witnesses for deposition in Taiwan between July 30 and August 2, 2013.[3]

For the 30(b)(6) topics, MediaTek designated Mr. Russell Yin to testify regarding a

---

[1]      The Court refused to allow jurisdictional discovery for purposes of demonstrating general jurisdiction over MediaTek through an alter-ego theory via MediaTek USA, Inc. or via MediaTek USA, Inc.'s alleged participation in research and development related to the accused MediaTek products.  (Dkt. No. 108 at 10.)  "Absent a minimal showing that MediaTek and MediaTek USA are essentially the same entity, MediaTek USA's contacts with this forum, whether or not related to the claims at hand, may not be imputed to MediaTek for purposes of personal jurisdiction."  (*Id.*)

[2]      *See* Ex. A, Declaration of Matthew Hawkinson in Support of MediaTek's Motion to Dismiss ("Hawkinson Decl."), at Ex. B-1 Freescale Semiconductor, Inc.'s First Set of Interrogatories to MediaTek Inc. Regarding Personal Jurisdiction (Nos. 1-15), Freescale Semiconductor, Inc.'s Second Set of Interrogatories to MediaTek Inc. Regarding Personal Jurisdiction (Nos. 16-24), and Freescale Semiconductor, Inc.'s Notice of 30(b)(6) Deposition of MediaTek, Inc. Regarding Jurisdictional Issues.

[3]      *See* Hawkinson Decl., at Ex. B-2 Email from Matthew Hawkinson, WilmerHale, to Matthew Gates, Bracewell & Giuliani (July 18, 2013).

global software license MediaTek granted to a third party (Mr. Yin had negotiated the agreement in question).  MediaTek designated Mr. Alex Chen to testify in response to Freescale's remaining noticed topics, which generally covered MediaTek's relationship with VIZIO and AmTRAN, as well as its overall sales and marketing activities.  Mr. Chen was and is MediaTek's General Manager of Corporate Sales and Account Management for the department responsible for the accused digital television ("DTV") chips.  (*See* Ex. A, Declaration of Alex Chen ("Chen Decl."), at ¶ 1.)  In addition to his own knowledge as the General Manager of the department responsible for sales of each of the accused chips, Mr. Chen prepared for these 30(b)(6) topics by interviewing the MediaTek employees responsible for sales and marketing of the accused MediaTek products:  Russell Yin, Gary Du, and Corey Hsieh.  (*See* Chen Decl. at ¶ 21; Hawkinson Decl., at Ex. B-3, Deposition of Alex Chen, August 2, 2013 ("Chen Depo."), at 9:21-10:6.)  Mr. Chen also enlisted the help of MediaTek's audit department to conduct searches of the email archives for the three employees that he interviewed, as well has his own email archive and the email archives of the additional MediaTek employees who might have relevant sales and marketing information, Ryan Chen and Andy Chu.  (Chen Decl. at ¶ 22; Chen Depo. at 9:21-11:19.)

Through these efforts, Mr. Chen sought to identify any information that might exist to suggest purposeful conduct on the part of MediaTek aimed at Texas.  (Chen Decl. at ¶ 23; Chen Depo. at 11:20-12:2.)  The interviews and the email searches uncovered no such evidence of any activity specifically directed at the State of Texas.  (Chen Decl. at ¶ 23; Chen Depo. at 11:20-12:2.)  As Mr. Chen testified, based upon his own personal knowledge and the results of his interviews and email searches in the sales and marketing groups:  "MediaTek does not have any sales [or] marketing action in Texas, USA."  (Chen Depo. at 11:20-12:2; *see also* Chen Decl. at ¶

23.)

Although Freescale did not serve any discovery on AmTRAN or VIZIO, virtually all of Freescale's discovery to MediaTek focused on MediaTek's dealings with AmTRAN and VIZIO, apparently hoping to develop some type of "vicarious jurisdiction" argument that MediaTek should be responsible for the decisions and activities of these two independent entities after they install MediaTek's ICs into their products.  The discovery uncovered exactly the opposite: AmTRAN is simply one of numerous customers who buy MediaTek's DTV chips in Asia (Chen Depo. 56:8-12), and is not even one of MediaTek's top customers for these chips (Chen Depo. at 55:17-57:8); VIZIO is not a customer of MediaTek – after MediaTek sells its DTV chips to AmTRAN in Asia, AmTRAN then uses these MediaTek DTV chips as components for the digital televisions it builds for several of its own different customers, one of whom is VIZIO (Chen Depo. at 24:14-22; 31-32:15); and finally, MediaTek has no say, control or even knowledge of where, geographically, its downstream customers (like AmTRAN), or the customers of its downstream customers (like VIZIO), sell or distribute their products.  (Chen Depo. at 74:17-75:19).

Freescale's remaining jurisdictional discovery further confirmed the complete absence of any purposeful conduct directed at Texas.  Tellingly, throughout all of its depositions, Freescale only **twice** asked about MediaTek's activities related to Texas.  (*See* Hawkinson Decl., at Ex. B-4 Deposition of Russell Yin, July 29, 2013, at 49:7-14.)  These two questions were directed at a global software license MediaTek granted to a third party.[4]  (*Id.*)  The first question was whether the world-wide scope of the license would include Texas – akin to asking whether Texas is within the world.  (*Id.*)  The second question asked Mr. Yin to speculate whether, when

---

[4]      As of the date of this filing, MediaTek has not received permission from this third party to publicly disclose its name in this pleading.

negotiating the license with the third party, MediaTek could have elected to specifically exclude Texas from the scope of the license.[5]  Throughout the remainder of the depositions allowed under this Court's order, Freescale failed to ask a ***single question*** about whether MediaTek engaged in any purposeful conduct directed at Texas.[6]

MediaTek's responses to Freescale's written discovery likewise confirmed the lack of any purposeful "conduct and connection" with Texas.  MediaTek has not entered into any agreements with AmTRAN or VIZIO related to sales or marketing of the accused products in Texas, nor has MediaTek had meetings or other communications with AmTRAN or VIZIO related to the sale or marketing of the accused products in Texas.  (*See* Hawkinson Decl., at Ex. B-5, MediaTek Inc.'s Responses to Interrogatory Nos. 1-4.)  MediaTek has made no efforts to sell or market the accused products to either AmTRAN or VIZIO related to Texas.  (*Id.*; MediaTek Inc.'s Responses to Interrogatory Nos. 5 and 6.)  MediaTek has never performed or prepared any marketing analyses, sales analyses, studies, or reports related to the distribution of MediaTek products into Texas (whether directly or indirectly).  (*Id.*; MediaTek Inc.'s Response to Interrogatory No. 10.)  MediaTek has never demonstrated the Accused MediaTek Products or related services or software in Texas.  (*Id.*; MediaTek Inc.'s Response to Interrogatory No. 11).  MediaTek has never engaged in any communications with VIZIO, AmTRAN, or any other party, related to:  (1) the use, sale, or distribution (whether direct or indirect) of the accused MediaTek products in the state of Texas; or (2) any other purposeful conduct aimed at Texas.  (*Id.*;

---

[5]     Although Mr. Yin speculated that this might have been possible, it would of course be impossible to step into the third party's mind at the time of the negotiations to determine whether this change would have been acceptable to them.  (*Id.*)

[6]     A word search of the four deposition transcripts in the LiveNote software program revealed no other hits for the word "Texas" in either the questions or the testimony.  (*See* Hawkinson Decl., at ¶ 8.)

MediaTek Inc.'s Responses to Interrogatory Nos. 16-21, 24.)  In short, MediaTek's discovery responses all demonstrate that MediaTek has not conducted any business activities related to or directed at the state of Texas with respect to the accused MediaTek products.  (*See id.*; MediaTek Inc.'s Responses to Interrogatory Nos. 1-15.)

Thus, the discovery secured by Freescale could not alter the relevant jurisdictional facts as set forth in MediaTek's original motion to dismiss, because MediaTek has simply not engaged in purposeful conduct aimed at Texas.

### B.    Unrefuted Facts Showing MediaTek's Lack of Contacts with Texas

The facts set forth in MediaTek's original motion to dismiss, as confirmed by Freescale's jurisdictional discovery, demonstrate that MediaTek does not have sufficient minimum contacts with Texas to warrant specific personal jurisdiction under a "stream of commerce" theory. MediaTek is a company incorporated under the laws of Taiwan with its headquarters in Hsinchu City, Taiwan.  (*See* Chen Decl. at ¶ 4.)  MediaTek is a "fabless" semiconductor design company, which refers to the fact that MediaTek designs semiconductor chips but does not manufacture them.  (*Id.* at ¶ 5.)  MediaTek's chips are manufactured in Asia by third parties known as "foundries."  (*Id.*)

MediaTek sells its chips to customers in Asia, primarily in Taiwan and mainland China. (Chen Decl. at ¶ 6.)  MediaTek has two types of customers:  (i) third-party distributors in Asia, who purchase chips from MediaTek for resale to customers in Asia; and (ii) "direct" customers located in Asia, who purchase chips from MediaTek for their own use or for incorporation into downstream products.  (*Id.*)  MediaTek has never had a customer located in Texas.  (*Id.*)

MediaTek has never controlled, participated in, tracked, or monitored the use or further sale of its chips after MediaTek or its distributors sell the chips.  (*Id.* at ¶ 7.)  After a third-party purchases a chip from MediaTek or one of its distributors, MediaTek has no control or input over

how that chip is used in the third-party's products, and has no role in or knowledge of any

subsequent shipment of such third-party products.  (*Id.*)  MediaTek neither sells IC products to

AmTRAN or VIZIO (AmTRAN purchases MediaTek's chips through a distributor), nor does

MediaTek work with these entities (or any other entity) to facilitate the sale of their products in

Texas.  (Chen Decl. at ¶ 19.)  No aspect of MediaTek's business relationship with AmTRAN or

VIZIO is related to or directed at the state of Texas.

MediaTek has never been authorized, registered, or licensed to do business in Texas.  (*Id.*

at ¶ 8.)  It has no office, operations, warehouse, place of business, distribution point, or other

infrastructure here.  (*Id.*)  It does not own, rent or lease any real or personal property in Texas.

(*Id.*)  MediaTek does not maintain any bank accounts, telephone numbers, fax numbers, or

mailing addresses in Texas.  (*Id.*)

As was before the Court in the prior motion, the only employee contact MediaTek has

ever had with the State of Texas is that between 2010 and 2012 it seconded nine employees to its

subsidiary MediaTek USA's office in Austin, Texas for limited terms of one to three years.  (*Id.*

at ¶ 17.)  Neither the seconded employees nor anyone else at MediaTek USA's Austin office has

performed work on any of the products accused in this action (or any other digital TV products),[7]

and they have no role in marketing, offering for sale, selling, facilitating sales, or distributing any

MediaTek products to or in Texas.  (*Id.* at ¶¶ 18-19.)  MediaTek has no directors, officers,

agents, or any other employees resident in Texas.  (*Id.* ¶ at 18.)  It has never sent any employee

to Texas to sell products, solicit business, attend trade shows, enter into agreements, or perform

warranty work.  (*Id.*)  While MediaTek has conducted research and development activities in San

---

[7]     In its complaint, Freescale names the following MediaTek part numbers as accused
products:  MediaTek MT5387IFSU, MT5387JFSU, MT5392DVMJ, MT5392UVSJ,
MT5395AUFJ, and MT5395EUFJ integrated circuits and/or chipsets.  (*See* Compl. at ¶ 138.)

Jose, California in connection with the accused MediaTek DTV chips, it has never performed any such work in Texas.  (*Id.* at ¶ 20.)

MediaTek has not made, used, offered for sale, sold, or imported its chips in Texas—either directly or through intermediaries (including distributors, retailers, and others).  (*Id.* at ¶ 9.)  Nor has MediaTek induced or contributed to the efforts of others to make, use, sell, offer for sale, or import any of its chips in Texas.  (*Id.*)  Nor has MediaTek shipped or distributed its chips to or in Texas, nor does it have an expectation that its chips, as stand-alone chips, would be sold to consumers in Texas (and none have).  (*Id.* at ¶ 10.)  Nor has MediaTek ever had a distributor for Texas, or otherwise had an established distribution channel for bringing its chips to Texas.  (*Id.* at ¶ 9.)

MediaTek has never used an "interactive" website to solicit business in Texas.  (*Id.* at ¶ 16.)  MediaTek's website provides information about MediaTek, MediaTek's products, and MediaTek subsidiaries.  (*Id.*)  The website has never solicited or processed orders from Texas. MediaTek's website has never permitted users to complete orders through the website, nor does the website list prices.  (*Id.*)

In sum, notwithstanding Freescale's jurisdictional discovery, no basis exists to support jurisdiction over MediaTek.

## II.     ARGUMENT

### A.     Legal Standard

Personal jurisdiction over a nonresident defendant is appropriate only if (1) the relevant state's long-arm statute permits the assertion of personal jurisdiction over the defendant, and (2) the exercise of personal jurisdiction would not violate the due process guarantees of the U.S. Constitution.  *See AFTG-TG, LLC v. Nuvoton Tech. Corp.*, 689 F.3d 1358, 1360 (Fed. Cir.

2011).[8]  The Texas long-arm statute extends to the full extent permitted by the Due Process

Clause of the U.S. Constitution.  *Religious Tech. Ctr. v. Liebreich*, 339 F.3d 369, 373 (5th Cir.

2003).  The sole inquiry in this case is therefore whether the exercise of personal jurisdiction

would offend due process.  *AFTG*, 689 F.3d at 1360.

> This Court articulated the constitutional standard in its previous order:
>
> "The constitutional touchstone for determining whether an exercise of personal jurisdiction comports with due process [is] whether the defendant purposefully established minimum contacts in the forum state."  (*Nuance Commc'ns, Inc. v. Abbyy Software House*, 626 F.3d 1222, 1230 (Fed. Cir. 2009) (internal citations omitted).  *See also Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985); *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).  In other words, a defendant must purposefully avail itself of the benefits and protections of the forum such that the defendant should reasonably anticipate out-of-state litigation.  *Burger King Corp.*, 471 U.S. at 474.  "This purposeful availment requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous or attenuated contacts . . . or of the unilateral activity of another party or third person."  *Id.* at 475 (internal quotations and citations omitted).  "Jurisdiction is proper, however, where the contacts proximately result from actions by the defendant himself that create a substantial connection with the forum state."  *Id.* (internal quotations and citations omitted.)

(Dkt. No. 108. at 3-4.)

There are two forms of personal jurisdiction:  general and specific.  *Grober*, 686 F.3d at

1345.  The fundamental requirement of specific jurisdiction—upon which Freescale exclusively

relies—is "purposeful availment."  *See Hanson v. Denckla*, 357 U.S. 235, 253 (1958) ("[I]t is

essential in each case that there be some act by which the defendant purposefully avails itself of

the privilege of conducting activities within the forum State, thus invoking the benefits and

protections of its laws.").  To establish specific jurisdiction, Freescale must show that (1)

MediaTek "purposefully directed" its activities at residents of the forum; (2) Freescale's claim

"arises out of or relates to" MediaTek's forum-directed activities; and (3) the assertion of

---

[8]    Personal jurisdiction issues in patent cases are governed by Federal Circuit law.  *Grober v. Mako Prods.*, 686 F.3d 1335, 1345 (Fed. Cir. 2012).

personal jurisdiction over MediaTek is "reasonable and fair."  *AFTG*, 689 F.3d at 1361; *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 473-74 (1985).  Freescale bears the burden of proving that the defendant has had minimum contacts with the forum state by demonstrating facts showing a *prima facie* case supporting jurisdiction.  *Grober*, 686 F.3d at 1345-46.  Where the jurisdictional allegations pled in a complaint are controverted by declaration, they are no longer to be accepted as true.  *See AFTG*, 689 F.3d at 1365 (refusing to accept as true bare allegations controverted by declaration); *accord Travelers Indem. Co. v. Calvert Fire Ins. Co.*, 789 F.2d 826, 831 (5th Cir. 1986) (same).

Unilateral activities of a third-party cannot constitute purposeful availment.  *Burger King*, 471 U.S. at 475.  Instead, Freescale must demonstrate "actions by the defendant *himself* that created a 'substantial connection' with the forum State."  *Id.*  As this Court made clear, "[t]he ultimate question [of the due-process inquiry] is whether MediaTek's 'conduct and connection' with this forum, as opposed to that of downstream manufacturers AmTran and Vizio, are such that it should reasonably anticipate being haled into court here."  (Dkt. No. 108 at 9, citing *World- Wide Volkswagen Corp*., 444 U.S. at 297.)  Freescale failed to meet this standard the first time this issue was briefed, and cannot meet it now.

### B.      MediaTek is Not Subject to Specific Personal Jurisdiction in Texas Under Freescale's "Stream of Commerce Theory"

MediaTek has never "purposefully directed" any activities toward Texas with respect to the chips Freescale accuses of infringement.  (Chen Decl. ¶¶ 6-10.)  MediaTek has never sold a single accused chip here.  (*Id.* at ¶ 9.)  Nor has it made, used, offered for sale, or imported a single accused chip in Texas.  (*Id.*)  Indeed, MediaTek has never so much as sold an accused chip to a third-party knowing that the third-party would ultimately use, sell, offer for sale, or import that chip here (whether as a stand-alone chip or incorporated in the third-party's

downstream product).  (*Id.* at ¶¶ 7, 9-10.)  And as discussed above, MediaTek has no officers, agents, employees, facilities, property, or any other established system for distribution of accused chips into Texas.  (*Id.* at ¶¶ 8-10, 17.)

Freescale's allegation that MediaTek has "placed one or more allegedly infringing products into a well-established distribution channel that ensures its products are sold" in Texas fails.  (*See* Comp. at ¶ 147.)  Discovery has confirmed that MediaTek has no established distribution channel to "ensure" that the MediaTek accused products are sold in Texas. MediaTek has not sold the accused products in Texas, has no distributors in Texas, and has no expectation that third-party products containing any of the accused products will be sold in Texas.  (Chen Decl. at ¶¶ 8-10.)  To the extent Freescale asserts that VIZIO televisions end up in Target, Wal-Mart, or any other retail stores in Texas, there is simply no evidence that MediaTek played ***any*** role in the processes or decisions that may have resulted in these product placements, because no such evidence exists.  Where, as here, the unilateral activity of a third-party is what introduces an accused product into the forum, no specific jurisdiction can exist over MediaTek. *See World-Wide Volkswagen v. Woodson*, 444 U.S. 286, 298 (1980).  As the Supreme Court has explained:

> The foreseeability that is critical to due process analysis is not the mere likelihood that a product will find its way into the forum state.  Rather, it is that the defendant's conduct and connection to the forum State are such that he should reasonably anticipate being haled into Court there.

444 U.S. 286, 297 (1980); *see also Asahi Metal Indus. Co. Ltd. v. Superior Ct. of Cal.*, 480 U.S. 102, 112 (1987) ("defendant's awareness that the stream of commerce may or will sweep the product into the forum State does not convert the mere act of placing the product into the stream into an act purposefully directed toward the forum State.").

Furthermore, as this Court has made clear, mere foreseeability that MediaTek's products

might, or even are likely to, end up in Texas is insufficient to establish personal jurisdiction. (Dkt. No. 108 at 8.)  The due-process inquiry must focus on MediaTek's "conduct and connection" with Texas, not the conduct and connection to Texas of VIZIO or Amtran.  (*Id.*); *see also Adell Corp. v. Elco Textron*, 51 F. Supp. 2d 752, 756 (N.D. Tex. 1999) (rejecting the argument that distribution of trucks by General Motors was part of the established distribution channel of component part manufacturer).[9]

        In applying *Beverly Hills Fan* and *Asahi* to a patent infringement litigation with very similar facts to those now before the Court, another Western District of Texas court held that a defendant who merely made sales outside of Texas —despite knowing that the allegedly infringing products "may end up" here—was ***not*** subject to personal jurisdiction absent proof that it had played an "active role" in distributing the product into Texas.  *Auto Wax Co. v. Kasei Kogyo Co.*, 2001 WL 1891719, at *2 (W.D. Tex. Sept. 6, 2001).  In *Auto Wax*, Defendant Kasei was a Japanese corporation based in Japan whose business included exporting clay products from Japan to a company in California called Mark V.  Mark V, in turn, sold the products in the United States, including Texas.  *Id*. at *1.  Like here, Auto Wax's complaint alleged personal jurisdiction over Kasei because Kasei supposedly knew that it was part of an "established distribution channel," and that one termination point of the channel was Mark V's Texas customers.  *Id*. at *2.  Rejecting this theory, the *Auto Wax* court held that "merely placing a product into the stream of commerce, knowing it might end up in the forum state, does not

---

[9]        The court in *Adell* correctly observed that "[t]he importance of the established distribution channel is that due process requires the non-resident defendant's contacts be *purposefully directed* towards the forum state."  *Id.* (citing *Burger King*, 471 U.S. at 472-74). The court held that the shipment of parts to General Motors as components for its products, which it then shipped to Texas, does not demonstrate purposeful minimum contacts with Texas. *Id.*

constitute purposeful availment." *Id.* at *2 (citing *Asahi*, 480 U.S. at 112).[10]  Rather, a patent

plaintiff must "show intentional targeting of the forum state, such as advertising, marketing, or

providing advice to customers in Texas." *Id.*

Turning to the present case, MediaTek has engaged in none of the purposeful availment

necessary to establish specific personal jurisdiction.  MediaTek has not made, used, offered for

sale, sold, or imported any products in or into Texas.  (Chen Decl. ¶¶ 4-16; *see also* Hawkinson

Decl. at Ex. B-5 (MediaTek's Response to Interrogatory No. 15).)  Nor has MediaTek shipped or

distributed its products to or in Texas, had a distributor for Texas, or otherwise had an

established distribution channel for bringing its products to Texas.  (Hawkinson Decl. at Ex. B-5

MediaTek's Response to Interrogatory No. 15.)  MediaTek has never had an expectation that its

own products, standing alone, would be sold to consumers in Texas, and none have.  (*Id.*)

MediaTek has never sold any product intending that it would be purchased by consumers in

Texas.  (*Id.*)  MediaTek has never, directly or through intermediaries, advertised in print, radio,

television or any other media originating from Texas or targeting Texas for distribution.  (*Id.*)

Furthermore, no MediaTek employees or representatives have attended any meetings, trade

shows, or events held in Texas for the purpose of selling or marketing any MediaTek products to

residents of Texas as part of their work responsibilities.  (*Id.*)

In fact, any purported connection between MediaTek and this forum is substantially more

attenuated that the factual scenario underlying the *Auto Wax* decision.  In *Auto Wax*, Kasei

purchased clay products and sold them directly to Mark V in California without altering the

---

[10]      Freescale's own counsel in this case, Alan Albright, represented the defendant in *Auto Wax* and expressly recognized there that "a defendant's awareness that its goods will end up in the forum state is legally insufficient to establish specific jurisdiction."  *See* Defendant's Reply Brief in Support of Its Motion to Dismiss at 2, *Auto Wax, Inc. v. Kasei Kogyo Co., Inc.* 1:00-cv-00531-SS, Reply by Kasei Kogyo Co., Ltd (W.D. Tex Sept. 26, 2001) (citing *Asahi*, 480 U.S. at 112) (Hawkinson Decl. at Ex. B-6).

products or incorporating them into other downstream products.  *Auto Wax*, 2001 WL 1891719, at *2.  Contrary to the circumstances in *Auto Wax*, the accused MediaTek products represent only one of numerous different component parts used by independent downstream companies to build their TV products.  Freescale's sole argument in support of personal jurisdiction over MediaTek is that MediaTek products are incorporated by others into end products that ***might*** be brought into this forum by third parties, just as they ***might*** be brought into any other forum in the world—and as this Court has stated, mere foreseeability is insufficient to establish personal jurisdiction.  (Dkt. No. 108 at 9.)

### C.   Exercising Personal Jurisdiction Over MediaTek Would Violate Traditional Notions of Fair Play and Substantial Justice

The final inquiry in personal jurisdiction cases asks whether exercising jurisdiction would offend traditional notions of fair play and substantial justice—a reasonableness inquiry.  *See Int'l Shoe Co.*, 326 U.S. at 476.  In determining reasonableness, courts consider the following factors: (1) the burden on the defendant, which is always a "primary concern"; (2) the forum state's interest in resolving the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the shared interest of the several states in furthering fundamental substantive social policies.  *Volkswagen*, 444 U.S. at 292.

Considering these *Volkswagen* factors, exercising personal jurisdiction over MediaTek in this forum would be unreasonable.  *First*, litigating in the Western District of Texas would unquestionably be a significant burden to MediaTek because MediaTek is located outside of the United States and has no offices, employees, documents, facilities, or other business in Texas.  *See Auto Wax*, 2001 WL 1891719, at *3 (recognizing that when defendant is located in foreign country, the burden on defendant is "especially high").  *Second*, given Freescale's tenuous

"stream-of-commerce" allegations, and the federal question subject-matter jurisdiction over patent cases, Texas has no greater interest in this dispute than any other State.  *Third*, although all plaintiffs have an interest in obtaining convenient and effective relief, Freescale has a readily available alternative forum that it has already demonstrated offers convenient and effective relief between these parties in the form of the United States International Trade Commission ("ITC"). Freescale has twice sued MediaTek in the ITC on one of the same patents asserted in this case, most recently in ITC Investigation No. 337-TA-822, which was tried to a final determination in October 2012 (finding the patent claims to be invalid and not infringed by MediaTek).  Another viable alternative forum is the Northern District of California, where MediaTek would be properly subject to personal jurisdiction and where ongoing litigation between the parties already exists.  (Dkt. No. 62 at 19.)  *Finally*, as the Federal Circuit has held, no State has a unique interest in advancing substantive patent policy.  *Patent Rights Protective Group, LLC v. Video Gaming Tech., Inc.*, 603 F.3d 1364, 1371 (Fed. Cir. 2010).  In short, because each of the relevant *Volkswagen* factors advise that it would be unreasonable to hale MediaTek into court in Texas, Freescale's request to exercise personal jurisdiction over MediaTek here would violate traditional notions of fair play and substantial justice.

## III.  CONCLUSION

For the reasons set forth herein, MediaTek respectfully requests that the Court grant its Renewed Motion to Dismiss Freescale's Consolidated Amended Complaint with prejudice as to MediaTek Inc.

Dated:  August 16, 2013

Respectfully submitted,

By:   /s/ Keith L. Slenkovich                         .

Keith L. Slenkovich (admitted *pro hac vice*)
keith.slenkovich@wilmerhale.com
Nathan L. Walker (admitted *pro hac vice*)
nathan.walker@wilmerhale.com
Tobias W. Mock (admitted *pro hac vice*)
tobias.mock@wilmerhale.com
Matthew Hawkinson (admitted *pro hac vice*)
matthew.hawkinson@wilmerhale.com
WILMER CUTLER PICKERING
  HALE AND DORR LLP
950 Page Mill Road
Palo Alto, CA 94304
Tel.: (650) 858-6000
Fax: (650) 858-6100

Michael E. Richardson
State Bar No. 24002838
mrichardson@brsfirm.com
BECK REDDEN & SECREST, LLP
One Houston Center
1221 McKinney Street, Suite 4500
Houston, Texas 77010
Telephone: (713) 951-3700
Facsimile: (713) 951-3720

*ATTORNEYS FOR DEFENDANT*
*MEDIATEK INC.*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of this motion and the accompanying exhibits was served on all counsel of record by electronic mail on August 16, 2013.

/s/ Keith L. Slenkovich

Keith L. Slenkovich

- 17 -